May it please the court, my name is Kim Alvarado and I represent Appellates Heath Carroll and the City of Mesa. I intend to reserve 3 minutes of time for rebuttal. This is an interlocutory appeal from a portion of the district court's order on summary judgment that denied qualified immunity to Carroll. We are asking this court for 3 rulings. First that Carroll is entitled to qualified immunity on the estate's 4th amendment claim for excessive force. Second that Carroll is entitled to judgment on the parent's 14th amendment claim for interference with familial relations. And third, under this court's pendent appellate jurisdiction, Mesa is entitled to judgment on the parent's state law wrongful death battery claim. A lot has been said on the scope of review in the party's brief. And I don't think the scope of review is in dispute, it's whether Carroll is entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved and reasonable inferences drawn in the plaintiff's favor. Here this entire incident, the 29 seconds, is captured on two body-worn cameras. There are no disputes of material facts. Well, I'm not sure that that's entirely correct because there's an unusual feature about this The body camera is not facing in the direction of fire. The body camera is facing towards the back of the vehicle, which would suggest that he's firing with his arm basically parallel to his body. And then after the 9th shot is completed, his body turns and Mr. Lopez comes into view. That's an unusual feature. Couldn't a jury draw an adverse inference from the fact that the shots were all done firing this way rather than in front of you and draw an adverse inference that he was in effect trying to deny the trier the ability to know what happened? Well, Your Honor, remember he fired those shots in 1.2 seconds. And the proceeding time in front of that was 2.3 seconds from when Lopez accelerated the vehicle in reverse, which hit Carroll, knocked the taser out of his arm. Carroll fell to the ground. He actually ran into his own car. And then Lopez accelerated and crashed into the random vehicle. That occurred in 2.3 seconds. So, yes, and Carroll gets up from the ground and fires. And you are correct. He fired with his arm extended to say that that's he's entitled to an adverse inference. It actually goes to show how quickly Carroll was acting in response to the perceived threat. The point is, all reasonable inferences have to be drawn in favor of the plaintiff. And we do not see exactly what Mr. Lopez was doing or what was happening because of this odd feature of the video. And I'm just wondering whether that means given the standard of review, and we're not the trier effect, can a jury look at that and, you know, decide to disbelieve his testimony and set it aside? Well, disbelieve his testimony as to that Mr. Lopez's hand was on the shifter at the time? No, I mean, a critical fact is his statement that he believed that his partner was under the vehicle. Correct. And if a jury has a basis from the circumstantial evidence, including the video, to set that aside and subtract it out, then what you're left with is that enough to warrant judgment as a matter of law? Well, I would disagree that that the jury could set that aside because it's only based on his testimony. It's also based on the accident reconstruction, which was undisputed in this with the vehicle and that she was not visible from in the video, excuse me, in the window after. Well, we don't know where she was again in the video because the video is not pointed in the direction of fire. And we would have had a better view of what he could see across the vehicle if he had been turned towards the vehicle itself rather than towards the back. Well, again, this goes back to officers are acting in dynamic, tense, rapidly evolving situations. I mean, to say that he's supposed to stand up and catch his body so that the camera can capture what's going on, as opposed to he's standing up and acting quickly because he believes Branham is in danger and he's in danger and he needs to stop this vehicle from moving around them. That kind of goes against all the court's discussions happened in the Monzon versus City of Moretta case. And even most recently in the Hyde versus Wilcox case, when we don't parse apart these down to little seconds, we look at the totality of the situation. And here this totality is 20 seconds. In looking at the totality of the circumstances here, couldn't a reasonable jury find that his perception of whether his partner was actually in danger is not reasonable under the circumstances? Under the circumstances, you have the accident reconstruction, you have the positions, the vehicle, the backing up and colliding of the vehicle behind that. Once Carol recovers his footing, he said that he shot because he perceived his partner was under the car. What if that perception is not reasonable? Couldn't a jury find that? And if that's the case, why isn't that a question of fact for the jury? Well, remember, he both testified that he feared for his own life and for that of Branham. But going back to Wilkinson versus Torres, which is the Ninth Circuit 2010 case, the shooter officer's mistake of fact as to the actual danger that his partner was in was not enough to defeat summary judgment in that case. And that in Wilkinson, the court granted summary judgment on the objective reasonableness prong. And in that case, even there was a bystander who gave a declaration who said, oh, the other officer wasn't actually in danger. And the court said, that is not enough to defeat summary judgment. Because even if in fact, the second officer was out of harm's way at the time of the shooting, what is undisputed is that the two officers had been in each other's line of sight before the shooting. And the critical inquiry is what the officer perceived. He now saw that the other officer was missing, and he was afraid that the vehicle would arc back and run over that officer. And it says reasonable mistakes of fact do not defeat qualified immunity. Right. But the way I read Wilkinson, I don't think that the mistake of fact was really central to the analysis of whether the conduct was reasonable or not. There were a lot of other extensively, the slippery yard, the accelerating vehicle, the failure to yield to direct commands. And so I don't think that that's really analogous. Under these circumstances, give me your best argument that there's no reasonable mistake of fact here. Well, I think there is a reasonable mistake of fact. I mean, Officer Carroll believed that Thrandam was in harm's way. I think the argument could be made that she still remained in harm's way because she actually ran toward in the same direction that the Lopez vehicle was accelerating. She probably intended to get out of the way. And in fact, she got into greater danger because she ran in the same direction that he was accelerating. So there was a mistake of fact. She was not under the vehicle at the time. She had not fallen at the time of the shooting. But Carroll had also fallen. And so that goes to his state of mind of he fell. He's been disarmed of his less lethal taser. And now this vehicle is accelerating. So is your best case that a reasonable mistake of fact never goes to the jury, Wilkinson? Well, certainly, because Wilkinson, well, in all the qualified immunity cases and all the defeats, qualified immunity, because the qualified immunity doctrine leaves ample room for mistakes of fact. But yes, in Wilkinson, there absolutely was a mistake of fact as to the officer who was doing the shooting. And yet that did not defeat summary judgment on the reasonable objectiveness prong. So do you have a view on whether we should hold the disposition of this case for a resolution of JKJ, the en banc case that was recently heard? I'm sorry, I'm not familiar with that case or the issues presented in it. If it goes to qualified immunity, certainly, I think this case can easily be decided on the clearly established prong. The case law that I cited yesterday in the Supplemental Citation of Authority was actually a case decided by the Ninth Circuit last month, Hobson versus Alexander. And again, in that case, the district court actually found what the district court described as a key factual dispute precluding summary judgment. And the Ninth Circuit said, no, it doesn't. Because again, we don't need to find disputes on every single little fact. What we're talking about here are the material facts related to the analysis. And here, the material facts are that an uniformed officer, they've been giving this Lopez numerous verbal commands that he disregarded, which then, of course, impacts their state of mind as to his compliance. Then he accelerated and reversed and hit one of the police officers, causing them to lose the taser. If I can ask you a question, sorry for interrupting. Obviously, we shouldn't view an officer's actions in a tense situation as if it were occurring in slow motion. But on the other hand, the car did seem like it was almost moving in slow motion. It wasn't a fast jerk, fast movement. It was almost just a very slow rollback. And the officer's actions may have been excessive. It may not have been reasonable there. It'd be one thing if the car again jerked very quickly, the wheel spinning. But it was almost like it was on neutral and it was almost tilting backwards that way. I'm not sure how you get that from the video. I think it is undisputed in this case that Lopez accelerated in reverse. And this was a very quick movement. He covered, I believe, nine to 10 feet in a very short period of time, which is the same distance, of course, that Carroll fell and fell into his own car, the same nine to 10 feet in this very short period of time. I see that I have three minutes left of my time. So I will reserve the rest of it, but unless there's any other questions you'd like me to answer. All right. Thank you, counsel. Thank you. Good morning to all of you. Dale Pelley. I think part of the discussion and what, you know, Judge Wynn and Judge Collins already mentioned, and counsel conceded, I believe, we have to take all of the plaintiff's facts as true and all reasonable inferences for this analysis. And the main reason the officer claims he shot at Mr. Lopez was because he believed his partner was under the car. And the district court correctly noted that a reasonable jury could conclude, first of all, he never actually had that belief at the time. And secondly, even if he had the belief, a reasonable jury could come to the opinion that was an unreasonable belief. Is the question of whether a belief is unreasonable, is that a question of fact, or is it a question of law that's determined in light of the underlying facts? I think in this case, it's a question of fact. There may be some overlap in terms of reasonableness. But as the district court noted, Judge Collins, the starting positions of the two officers, remember, only Officer Carroll reached into the car with his taser. The car went straight back, as Judge Lee indicated, slowly. Their expert claims five miles an hour. And I think that's an important distinction with all these high pursuit cases that are referenced. And based on her training, the partner officer stepped away appropriately from the car. He never saw the car hit her, never saw her fall down, never heard her scream or yell, expected her to follow her training by stepping away from the car. Shot at an angle, as the district court noted, well, if she was there underneath the car, she would have been in the background of his nine shots. And their own expert testified, Judge Collins, that with the car just going slowly straight back, it would have been impossible to pull the partner underneath the car. Maybe even more importantly, circumstantially, after the incident, he immediately asked his partner to dispatch for code three and never looked underneath the car. If he had thought that she was actually underneath the car, it's unlikely that he had been asking her immediately after the shots to make a radio dispatch. He would have looked under the car for her. The first time he ever mentions that he thought she was under the car was when he gave a statement some days later after consulting with an attorney. Now, one view of that could be attorneys are aware of the Wilkinson case, and we don't want a situation where someone thinks they're saying the magic words a couple of days after an incident, oh, I thought my partner was under the car, and then have their counsel in litigation, and even here now, cite Wilkinson. So if, in fact, those are factual disputes, which can easily be resolved against Officer Carroll, then there's no legitimate basis for the shooting. He concedes you couldn't shoot for the car fleeing or moving forward. We know the car was stopped at the time of the nine shots. There was no warning given that he was going to shoot. We do this. Did Officer Carroll say whether he thought that his life was endangered in the situation? Well, that's a little unclear. In his original statement and deposition testimony, it was just the officer. The district court interpreted the motion, and you could see in its ruling that the district court noted that Officer Carroll is only saying he is shooting to defend his partner officer, not himself. But counsel has made the point that no, he was also shooting to defend himself. But I would say, Judge Lee, if that's the case, that clearly also was completely unjustified because he's to the side of a vehicle that stopped. And so clearly, Wilkinson is distinguishable. Wilkinson, there was a high speed pursuit. We don't have that here. There was a muddy surface. We don't have that here. The car was spinning around and accelerating. We don't have that here. The officer saw his fellow officer go to the ground in Wilkinson. We don't have that here. The car was moving at the time of the shots, including moving in the direction of where the officer perceived the downed officer to be. So the facts of Wilkinson are very easily distinguishable. The trial court here distinguished them. The case of Villanueva distinguished them. Villanueva is a good case because it talks about Acosta, a 1996 case, and A.D., a 2013 case. And Villanueva noted as of 2016, which was the date of the incident in Villanueva, the law was clearly established that an officer could not shoot. I'm sorry, Judge Lee. Interrupt you there. I mean, a lot of the cases you cite, I think, goes to maybe the first prong of the qualified immunity analysis. And then if we look at the second prong, the clearly established, I guess the issue here is, you know, facts here do seem, you know, quite distinct, a material fact. And the fact here is that the officer's weapon at the time, the taser, was knocked out of his hand and fell into the car of, you know, where the plane, if you're, was in the car. So that seems like a pretty, you know, distinct and material fact here where an officer loses his weapon because, you know, the car moved and it hit his hand. I mean, is there any case law that is somewhat enough to do that? Yeah, thank you, Judge Lee. Two points I'd like to respond. First of all, I do think those cases go to the second prong of the qualified immunity analysis because the cases themselves say the law was clearly established as of 2016, well before this incident, that you couldn't shoot at a stop or slow moving vehicle. That, in fact, if you found yourself in the path, you should step out of the path rather than shooting. Moreover, and I think this is important, the specific policies that they had, which Officer Carroll was familiar with, about not shooting the occupants of moving vehicles and stepping out of the way rather than shooting, I think were based most likely in part on the 1996 Acosta decision because that's where policies come from, Ninth Circuit published opinions. And so he was aware of that policy. He was aware of that and knew it was inappropriate to shoot. So the specific point, Judge Lee, about dropping the taser, I would agree we could probably look at any case and find one detail that is somewhat different than a prior published opinion. But losing a taser does not suddenly justify the use of deadly force if it's otherwise inappropriate. And in fact, one take on the facts could be that Officer Carroll was so upset that the car moved backwards and that he lost his taser, that he kind of lost his temper and lost control, if you will, momentarily, and out of anger and revenge, fired nine shots at this young man killing him. And if that's how the jury... That's a good point, actually, for me to transition you to a discussion of the 14th Amendment. Because, and particularly as the second prong of clearly established law, it seems to me this case is different from a case like A.D.E. where the officer shot and continued shooting even though his supervisor told him to stop. Here, it happened very, very rapidly under circumstances where the officer had obviously been hit with the car. It's unclear to me where he was hit. Was it his knee, you know, ran over his foot or his arm as he dropped the taser? But the fact of the matter is he gave a warning, don't put the car in drive, did put it in reverse, did ram the car behind him, did hit the officer, and this happened within seconds. So what's your best case on the second clearly established prong for the 14th Amendment claim? Well, I do think A.D.E. is helpful in that regard. I do agree some of the facts are different, Judge went to a jury where the jury decided there was sufficient evidence to support a finding. So I would say A.D.E. is probably when you get to shooting at a moving vehicle. But I will say this, the time is short. But you rely on any other case? Because I think A.D.E. presents pretty different facts. Well, all the cases that talk about the 14th Amendment, I mean, as you know, Judge Winn, if there's time to deliberate, the deliberate and different standards applied. If there's not, then it's a purpose to harm unrelated to a legitimate law enforcement objective. And I would suggest, first of all, it happened fast in part only because the officer decided to shoot fast. He didn't give additional commands. He didn't give a warning. He didn't tell him, you know, stop the vehicle now or I'll shoot. If he had said stop and he had stopped, we would all agree the shooting would be clearly inappropriate. If the car rolled forward three feet and he said stop and the person stopped in compliance, I think we'd all agree the shooting was inappropriate. So if in fact he fired out of anger or loss of control, the purpose to harm is clear from my perspective. If you fire nine shots at close range at someone, I think it's pretty clear you're going to harm them and most likely kill them. Unrelated to a legitimate law constitutional force in violation of the Fourth Amendment, could ever be a legitimate law enforcement objective. And quite frankly, Judge Winn, sometimes I wonder why we've set up a scheme with two different standards for standing on damages with the Fourth and the Fourteenth Amendment. If something is unconstitutional, from my perspective, all relevant damages should flow. And maybe that's a discussion for another day, whether we should have this different standard that most people, I don't even know, jurors understand what it means. But if in fact he was upset because he lost his taser and there was minor contact, remember no visible injuries, and I don't know if it's clear he ever went down to the ground, and he was upset so he thought he was going to teach this person a lesson and out of anger fired those shots at close range while the car was stopped. I think, Judge Winn, a reasonable jury could find that that violated the Fourteenth Amendment. The other thing, I think it's pretty clear that the state law claim, I don't believe there's jurisdiction on interlocutory appeal for your honors to consider that. That's kind of a separate issue. So I would like to... Well, I mean, there would be in the sense that if we were to conclude at prong one of the qualified immunity test that, you know, the force was reasonable as a matter of law and summary judgment should have been granted on that basis, that necessarily decides the merits of the state law claim. So in that limited sense, it would be the same. But if we didn't go that route, then maybe it would be different. Yeah, I agree with you, Judge Collins. That is true. And I would like to summarize by saying I acknowledge there's some disputed facts here. And I don't think the video tells the whole story, part of the story. That's why we need the depositions of the officers, which we took to find out about what was going on. And I think at this stage, if we're going to be objective about it, we have to say, well, if there are disputed issues of fact, and reasonable juries could come to different conclusions, we have to let this case play out and let the jury, if it goes that route, if it doesn't resolve, make those determinations. Because if in fact, as Judge Lee indicated, this vehicle was going slowly backwards at five miles an hour, and no officer was in the path of the vehicle, both police practice experts agreed, even Officer Carroll agreed in his testimony, that if nobody was in the path of the vehicle, and his partner was not underneath the vehicle, it'd be inappropriate to shoot. And that's really what we have here based on plaintiff's facts. And I think there's a lot of information to suggest that it was not reasonable for him to think his partner was under the car. Quite frankly, I think that was made up after the fact to try to justify an unjustified shooting. And it just doesn't make sense under the facts of our case. And as I've already indicated, the Wilkinson case is distinguishable. And I think the law was clearly established, even the second prong, by Acosta, A.D., Villanueva, and even their own policies. And Drummond is an important case, a 2003 opinion that I know you're familiar with, that says, you know, it's true that the policies and training don't necessarily set the constitutional standards. But they're definitely factors to consider in not only the first prong of qualified immunity analysis, but the second prong. Because if the training and policies themselves say certain conduct is wrong, and the officers were aware of that, they shouldn't be in a position after an incident to say they didn't know that conduct was wrong. And so I asked Ms. Alvarado this, and I'll ask you the same thing. Are you familiar enough with JKJ to weigh in on whether we should hold this case for resolution in that other matter? I'm embarrassed to say I'm not. I wish that I was. And I feel bad for my colleagues out there that might be watching us today that I'm not familiar with their case. I'm sure it's a very win. I think this should be an easy call for your honors to affirm the lower court's ruling and send this back based on the law and the facts now. But obviously, I don't know enough about the case and I'll defer to whatever the court thinks is appropriate. All right. Thank you very much, counsel. Thank you. Rebuttal. Thank you, Your Honor. Let me just touch on a few things. Regarding this issue of he should wait, you know, Carroll should wait, he should investigate whether Thrandam is under the vehicle, I would direct the court to the Mullnix v. Luna case, that's a 2015 Supreme Court case. And that case actually cited and distinguished Smith v. Culp, which is a Sixth Circuit case that the plaintiff cited. But it cited with approval and discussed Long v. Slatton, which is an Eleventh Circuit case. And in that case, it said the officer did not violate the Fourth Amendment by fatally shooting a mentally unstable person who was attempting to flee in an officer's vehicle, even though the individual had not yet operated the vehicle dangerously. And what the Supreme Court said, and what they quoted with approval from the Eleventh Circuit, is the law does not require officers in a tense and dangerous situation to wait until the moment that a suspect uses a deadly weapon to act to stop the suspect. And it said if this officer has reason to believe that the suspect is dangerous based on his unstable mind, his failure to heed warnings, then he doesn't have to wait around and take the chance that the suspect will eventually comply and just Do you agree that if there was no one in the path of the vehicle that the shooting was unreasonable? No, not at all. Because first of all, Carroll, and he testified to this unequivocally, he absolutely believed that he was in fear. I mean, we don't know what this vehicle is going to do. All we know is that so far, Lopez has used the vehicle to hit an officer, knock him to the idea that Lopez is just going to drive off and not bother anyone. The officers can't make that decision or make that assessment. What's happened is that in 2.3 seconds, this incident went from a very simple DUI stop, in which the officers are giving very simple commands to the suspect, to suddenly this suspect creates this incredibly dangerous, violent predicament. That's 2.3 seconds. So, at that point, when Carroll has been hit, thrown to the ground, and lost his less lethal taser, he absolutely was justified in using deadly force to protect himself at that point, because he doesn't know what Lopez is going to do. And that goes into the fact that that's why his body was canted. He literally just stood up and fired, as opposed to turning around so that his camera would be capturing the events. Just one other, just a factual issue I wanted to correct. Plaintiff's counsel had said that Mr. Carroll gave this statement days later. It was actually the morning of, and that's the actual policy. You'll see that in the record, that the shooting happened at 3 a.m. and all officers are interviewed by the district, the county attorney the same day, within hours. All right. Thank you very much, counsel, both sides, for your very helpful arguments today. The matter is submitted.
judges: NGUYEN, COLLINS, LEE